**MANTANONA**
LAW OFFICE

GCIC Bldg., Suite 601B
414 West Soledad Avenue
Hagatna, Guam 96910
Telephone (671) 472-3666
Facsimile (671) 472-3668

Attorney for **James B. McDonald, Jr.**

FILED
DISTRICT COURT OF GUAM
APR 2 5 2003
MARY L.M. MORAN
CLERK OF COURT

15

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | | |
|---|---|---|
| JAMES B. MCDONALD, JR. | ) | Civil Case No. 02-00031 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **PLAINTIFF'S RESPONSE TO** |
| | ) | **DEFENDANT'S MOTION TO DISMISS** |
| SOUTH PACIFIC PETROLEUM | ) | |
| CORPORATION, et.al. | ) | |
| | ) | |
| Defendant, | ) | |

### RESPONSE TO INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

### INTRODUCTION

Plaintiff provides this Response to the Motion to Dismiss filed by individual defendants Michael Hahm, Brian Suhr, and Sang Yeon Hahn (hereinafter "individual defendants"). Individual defendants base their motion on the rationale that individual defendants are not liable as individuals under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. Individuals under the "single employer"/"joint employer" theories of liability, individual defendants can still be held liable in the above-entitled action. While the Ninth Circuit currently adopts the stance individual defendants have propounded, Plaintiff hereby asserts that under the liberal approach to Rule 12(b)(6) motions, the liberal

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 2 of 15

interpretation of Title VII and the ADA, the split of authority on whether individuals are liable under Title VII and the ADA. The Court should therefore deny individual defendants' motion.

## STANDARD ON MOTION TO DISMISS

### In general

Individual defendants bring this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12, which provides that a defendant can assert as a defense by motion the Plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Courts must carefully scrutinize motions to dismiss, weighing doubts in favor of nondismissal. Landmark Tower Associates v. First National Bank of Chicago, 439 F.Supp. 195 (D.C. Fla. 1977). Ordinarily, a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader. Williams v. Gordon, 529 F.2d 668 (9th Cir. 1976); Harman v. Willbern, 227 F.Supp. 892 (D. Kan. 1964) (motions to dismiss are viewed with disfavor and are granted sparingly). The policy underlying a careful scrutiny of motions to dismiss are to provide plaintiffs with their day in court on the merits of their case. Vogelstein v. National Screen Service Corp., 204 F.Supp. 591 (D. Pa. 1962).

### Regarding Inadequate Pleadings; Request for Leave to Amend Complaint

While a motion to dismiss tests the sufficiency of the complaint, a court should give Plaintiff an opportunity to amend his complaint, rather than dismiss it, if it appears that a more carefully drafted complaint might state a claim upon which relief could be granted. Friedland v. Nims, 755 F.2d 810 (11th Cir.1985); Fuller v. Rich, 925 F.Supp. 459 (N.D. Tex. 1995). Especially in discrimination cases, summary disposition is not favored,

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 3 of 15

especially on a 'potentially inadequate factual presentation.'" McKenzie v. Davenport – Harris Funeral Home, 834 F.2d 930, 934. In the event a court dismisses a complaint for failure to state a claim upon which relief may be granted and plaintiff has requested leave to amend, the request should ordinarily be granted. Verdon v. Consolidated Rail Corp., 828 F.Supp. 1129 (S.D.N.Y. 1993).

For reasons set forth below, Plaintiff suffered racial and disability discrimination and harassment prior to the formation of South Pacific Petroleum Corporation ("SPPC"). While there did not exist a formal legal entity prior to the formation of SPPC, Plaintiff was "employed" by individual defendants Hahn, Suhr and Hahm. The Complaint admittedly fails to address the pre-SPPC violations of law, and Plaintiff hereby requests leave to amend his First Amended complaint to include those allegations.

## INDIVIDUAL LIABILITY

### Single/Joint Employer Theory

Acting as an agent is not the only method in which an individual may be found liable under Title VII and ADA. Courts widely recognize the "single employer" and "joint employer" theories.[1] Under either theory, a court may aggregate the number of employees under two entities that are highly integrated with respect to ownership and operations, for the purpose of conferring Title VII jurisdiction. See Baker v. Stuart Broadcasting Co., , 560 F.2d 389, 391 (8th Cir. 1977) (courts allow aggregation to serve Title VII's remedial purposes); 993 F. Supp. at 881; Landon v. Agatha Harden, Inc., 6

---

[1] Courts often do not distinguish between the two theories, as the pertinent factors to determine if two employers are a "single" employer or a "joint" employer are the same.

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 4 of 15

F.Supp.2d 1333, 1338 (M.D. Ala. 1998) ("where two or more business are 'highly integrated with respect to ownership and operations,' the number of individuals employed by each may be aggregated for purposes of calculating whether the jurisdictional requirements of Title VII are met").

A court must examine four factors to determine if two employers are to be aggregated: (1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership or financial control.[2] Morgan v. Safeway Stores, Inc., 884 F.2d 1211, 1213 (9th Cir. 1989). However, "all four factors need not be present for the single employer doctrine to be applicable because the key is that the two entities are 'highly integrated with respect to ownership and operation.'" E.E.O.C. v. Arlington Transit Mix Inc., 734 F.Supp. 804, 807 (E.D. Mich. 1990).

In any event, all four above-mentioned factors can be established between the entity that "employed" Plaintiff prior to the incorporation and formation of SPPC and SPPC after its incorporation. As the development of this theory requires exposition on the pre-SPPC entity, the following describes the events surrounding Plaintiff's involvement in the creation and formation of SPPC as a corporate entity. Nevertheless, Plaintiff was "employed" by Hahn, Suhr and Hahm prior to the formation of SPPC that shared with SPPC interrelated operations, common management, centralized control of labor relations, and common ownership and financial control.

---

[2] These four factors are also known as the "NLRB Factors," being promulgated by the National Labor Relations Board. Using these factors is the predominant trend in federal law. McKenzie v. Davenport-Harris Funeral Home, 834 F.2d 930, 933 (11th Cir. 1987).

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 5 of 15

## Pre-SPPC Conduct

Prior to joining SPPC, Plaintiff had more than fifteen years in the petroleum industry, including being branch manager of Esso Guam Inc. (hereinafter "Exxon"). Plaintiff also worked for Mobil Oil in both Guam and Singapore, and had numerous contacts and in-depth knowledge of the petroleum industry in Guam and Singapore.

Plaintiff was the most qualified person to lead a team interested in purchasing the Exxon assets on Guam, which were for sale in 2000. Recognizing that knowledge and qualifications, individual defendants pursued Plaintiff in March 2000 to join them and assist them in submitting a bid for the Exxon assets. Suhr contacted Plaintiff to meet with Hahm and Hahn in Los Angeles, at which meeting Plaintiff submitted projections, financials, and an operating plan, which Plaintiff himself authored and created. At such meeting, Hahn expressly stated that should he pursue purchasing the Exxon assets, Plaintiff would manage the new business, and would assume full responsibility for the success or failure of the business. Plaintiff agreed to that arrangement.

Over the next few months, Plaintiff worked with Suhr to assemble a bid proposal. In particular, Plaintiff himself alone developed the points, which individual defendants used during their negotiations with Exxon, and later to secure the funding for SPPC. By the end of June, Plaintiff provided substantial assistance to individual defendants in getting their proposal approved by Exxon. Plaintiff provided this assistance in consideration for Hahn's promise that he would manage the newly formed corporation. During these pre-SPPC negotiations, but after Plaintiff agreed to work with individual defendants based on the promise of being employed as a general manager of what would become SPPC, individual defendants continually harassed Plaintiff for being overweight, Individual defendants also harassed Plaintiff on the basis of race and

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 6 of 15

national origin, and used his race to give them an advantage in forming SPPC without the intention of maintaining his employment after the formation of SPPC.

In early July, individual defendants paid for Plaintiff to travel to Guam to formally negotiate his salary and to discuss the operation of SPPC and Plaintiff's involvement with the company. Even prior to the finalization of Plaintiff's salary and compensation with SPPC, Plaintiff acted on individual defendants' behalf in discussing the approval of the Exxon assets with Exxon personnel and with local officials. Individual defendants formally hired Plaintiff as the general manager and vice president of the new company, with a seat on the board of directors, with a promise for a 5% share in SPPC. Plaintiff was also given a company vehicle, a 1998 Ford Explorer that had been owned by Suhr's wife. Suhr was later reimbursed in the sum of $18,000 for transferring title to the vehicle to Plaintiff.

Plaintiff negotiated his salary at the offices of Hanom, a Guam corporation owned by Suhr. Prior to the formation of SPPC beginning in May 2000, Suhr's Hanom offices operated as the de facto offices of those involved in the formation of SPPC. Plaintiff was assigned a desk in this office, and worked at that location through November 2000. Hanom's only employee was Jeanette Moreno, who worked for both Hanom and SPPC at Hanom's location, and later at the SPPC location in Tamuning. Moreno provided work for SPPC as an employee of Hanom, and later provided work for Hanom, even while she received an SPPC paycheck.

Remaining details regarding Plaintiff's occupation with SPPC and the discrimination and harassment experienced therein are alleged in the First Amended Complaint, and are not pertinent to the instant motion.

//

//

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 7 of 15

## NLRB Factors Applied

### Interrelated Operations

In determining if two entities have interrelated operations, courts examine whether the management services were shared, such as the use of employees of one entity for the performance of work benefiting the other entity. Player v. Nations Biologics, Inc., 993 F.Supp. at 882; Landon, 6 F.Supp.2d at 1339. In this case, the management of the pre-SPPC entity and SPPC consists of essentially the same players: Hahn, Suhr and Hahm. Hahn, Suhr and Hahm, along with Plaintiff, managed the operation in obtaining the proposal, executing Plaintiff's plans, and in forming SPPC. While Plaintiff's responsibilities expanded under SPPC, Plaintiff was basically executing the plans that he himself developed for the new company. His essential role did not change, nor did the roles of Hahn, Suhr or Hahm, once SPPC was incorporated. All individual defendants, as well as Plaintiff, worked pre-SPPC for the formation of SPPC and the work the entity was to later perform as SPPC. The physical location of the pre-SPPC entity was housed in Hanom, a Guam corporation owned by Suhr. See Arlington Transit, 734 F.Supp. at 807 (two entities located at the same address and using the same letterhead considered a single employer); E.E.O.C. v. Financial Assur., Inc., 624 F.Supp. 686, 690 (W.D. Mo. 1985) (two entities shared office space). All expenses incurred by Hanom relating to the formation and operation of SPPC were reimbursed either by Hahn's corporation, Callahahn, or by SPPC. Suhr also provided Plaintiff with a personally owned vehicle as the company vehicle.

//
//
//

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 8 of 15

## Common Management

As mentioned in the previous section, the same individuals operated to form SPPC pre-SPPC and SPPC. Hahn, Suhr and Hahm contacted Plaintiff to join their management team, and Plaintiff did so after promises that he would be appointed to an executive position. All individual defendants were involved in the formation of SPPC and now serve as officers of SPPC.

## Centralized Control of Labor Relations

In determining whether there exists centralized control of labor relations, courts look to whether personnel were shared among the two entities, and "that the same persons made employment decisions for all entities." Landon, 6 F.Supp.2d at 1340. Personnel determinations for the pre-SPPC entity were made by Hahn, Suhr and Hahm, as exemplified by their pursuit of Plaintiff to join their management team. Along with Plaintiff, all individual defendants were subsequently involved in controlling labor relations and transfer of hiring Exxon employees as SPPC employees. For example, Hanom's *sole* employee Jeanette Moreno, was later moved to SPPC within days after SPPC officially took over operation of the Exxon assets, and operated as Suhr's secretary in both locations. While Moreno became an SPPC employee, she continued her work with Hanom. Even after moving to the SPPC offices, Moreno and Suhr would work at both the Hanom and SPPC locations.

## Common Ownership or Financial Control

"Where the same *person* or corporation owns both of the entities sought to be merged, and the other interrelationship factors are present, the 'single employer' theory may be applicable." Landon, 6 F.Supp.2d at 1338 (emphasis added). In addition, "where

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 9 of 15

one individual or group of individuals controls all the relevant entities and serves as an officer and director with each of them, courts have found that there exists sufficient evidence of common ownership or control over the entities." Landon, 6 F.Supp.2d at 1340-41; see also Baker, 560 F.2d at 392 (two entities owned by same individuals and members of their families; individuals serve on board of directors; one individual is president of both entities). There is no doubt that financial control and ownership has primarily been maintained by Hahn. Hahn provided the majority initial funding to obtain the Exxon assets, promised Plaintiff that he would be hired, and now owns 80% of the SPPC shares. Suhr and Hahm are also 5% shareholders of SPPC. Hahn maintained control of the corporation, being the president of the board of directors.

Consequently, there is no doubt that the pre-SPPC entity that consisted mainly of Hahn, Suhr and Hahm is essentially the same management team at SPPC. It is palpable from these facts that Plaintiff worked for Hahn, Suhr and Hahm, that all individual defendants acted as supervisors of Plaintiff, and that there is such an interrelation of these two entities so as to bring individual defendants within the jurisdiction of Title VII. In light of the inferences to be viewed in Plaintiff's favor, this conclusion is inescapable.

### Title VII

Title VII prohibits an "Employer" from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000-2(a). Title VII defines an "employer" as "a person who engaged in an industry affecting commerce who has fifteen or more employees . . . and an agent of such a person." 42 U.S.C.

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 10 of 15

§2000e(b). "An individual qualifies as an 'employer' under Title VII if he or she serves in a supervisory position and exercises significant control over the plaintiff's hiring, firing or conditions of employment." Paroline v. Unisys Corp., 879 F.2d 100, 104 (4th Cir. 1989).

Consistent with the underlying purpose of Title VII to eliminate the inconvenience, unfairness and humiliation" of discrimination, the term "employer" should be interpreted liberally. Virgo v. Riviera Beach Associates, Ltd., 30 F.3d 1350, 1359 (11th Cir. 1994); Baker v. Stuart Broadcasting Co., 560 F.2d 389, 391 (8th Cir. 1977) Whites v. Hahn, 699 F.Supp. 206, 207 (E.D. Mo. 1988).

## ADA

As individual defendants recognize in their motion, the standards that apply to Title VII largely and similarly apply to claims under the ADA, and the definition of "employer" under both statutes mirror each other: ADA defines "employer" to include a "person engaged in industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A).

### Individual Liability

#### Title VII

In Defendants' Motion to Dismiss, Defendants claim that individuals are not liable for Title VII violations pursuant to Miller v. Maxwell's Intern. Inc., 991 F.2d 583 (9th Cir. 1993). The Miller court reasoned that since Title VII limits liability to employers with 15 or more employees, Congress did not want to burden small entities and individuals should therefore not be liable under Title VII. 991 F.2d at 587. The Ninth Circuit also reasoned

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 11 of 15

that the conduct of agents are to be imputed to be acts of the employer. Id.

However a wide split of authority exists among the circuit courts, which brings the Ninth Circuit decision and its rationale into question. Compare Miller, 991 F.2d 583 with Jones v. Continental Corp., 789 F.2d 1225, 1231 (6th Cir. 1986) ("the law is clear that individuals may be held liable . . . as 'agents' of an employer under Title VII"); Douglas v. Coca-Cola Bottling Co., 855 F.Supp. 518 (D.N.H. 1994); Bishop v. Okidata, 864 F.Supp. 416 (D.N.J. 1994). In contrast to Miller, the opposing line of authority holds individuals liable under Title VII. The Fourth Circuit, for example, holds that "[a]s long as the company's management approves or acquiesces in the employee's exercise of supervisory control over the plaintiff, that employee will hold 'employer' status for Title VII purposes." Paroline, 879 F.2d at 104. See also Vakharia, 824 F.Supp. at 785 ("Decisionmaking employees also may be held liable in their individual capacities under Title VII.").

This line of cases also distinguish between co-workers and supervisors/managers, limiting liability to the latter. "That of course makes good sense, for the very word 'agent' carries the connotation of someone acting within his or her authority." Ball, 54 F.3d at 667. See also Garcia, 28 F.3d at 451 (immediate supervisors are employers when delegated the employer's traditional rights, such as hiring and firing, but not for co-workers). In that sense, it would be superfluous for Title VII to include a specific prohibition on acts committed by agents, because "employer" as defined in section 2000e-2(a) necessarily embodies respondent superior principles on its own. Ball 54 F.3d at 667.

Under this line of authority, Hahn, Suhr and Hahm would be individually liable

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 12 of 15

under Title VII. All of these individuals played a part in the hiring and firing of Plaintiff. All individual defendants supervised Plaintiff and reviewed Plaintiff's work product. See Paroline 879 F.2d at 104 ("The power to determine work assignments often represents a key element of supervisory authority.").

Furthermore, policy goals encourage the imposition of liability on the individual defendants.

> Title VII has always served two purposes: to compensate the victims of discrimination . . . and to deter discrimination in the future. To conclude that personal accountability of supervisory employees is unnecessary to reinstate victims or to award them their back pay is to neglect Title VII's broader goal of eradicating discrimination.

Vakharia v. Swedish Covenant Hosp., 824 F.Supp. 769, 785 (N.D. Ill. 1993). In general, courts are also concerned with setting a negative precedent should individuals be free from liability. First, if individuals are not held liable for their discriminatory conduct, and for example, the corporation should become insolvent, such individuals

> may never alter their illegal behavior and the wrongdoers may elude punishment entirely, while the victim may receive no compensation whatsoever. That outcome is incompatible with the broad remedial purposes of . . . Title VII, which were intended to provide "necessary relief" and to ensure "complete justice."

Id. at 786. Second, the goal of deterrence is defeated when individuals act in a

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 13 of 15

discriminatory fashion, but with the understanding of legal protection.

Notably, Title VII has competing policies, in which the interest of individuals to be free from discrimination may conflict with the policy of preventing small entities from shouldering the expense of liability for discriminatory conduct. However, the more important of these two policy goals is eradicating discrimination. Otherwise, the exception applied to small entities will frustrate the ultimate goal of Title VII. In other words, the value of increasing deterrence by imposing supervisor liability outweighs the value of limiting Title VII liability to employers. The increased deterrence resulting from holding supervisors liable eradicates discrimination.

Based on the lack of Supreme Court input on this issue, as well as the underlying policies of Title VII, individual defendants in this case should remain liable.

## ADA

A similar conflict exists on the issue of whether an individual may be held liable under the ADA. Many courts do hold, however, that "decision-making employees of private employers who take discriminator actions outside of the scope of the employer's institutional policies may be individually liable." Bishop v. Okidata, 864 F. Supp. 416, 423 (D.N.J. 1994) (finding no preclusion of individual liability under Title VII and ADA, and thus denying motion to dismiss against individual defendants). The Bishop court, examining the plain language of the ADA held that that plain language "indicates that 'agents' of those who employ more than 15 workers are 'employer' and thus liable under the statute. Supervisory employees are clearly 'agents,' and thus the distinction between 'individual' and 'official' liability should be abandoned in ADA cases." Id. The Bishop

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 14 of 15

court also resolved the concern that was raised in the Title VII context by Miller that Congress did not intend small entities to burden the expense of discrimination lawsuits. The Bishop court instead held that "[i]ndividuals, however, have always been liable for torts committed in the workplace, including indemnification of their employer where the plaintiff proceeds directly against the employer under the theory of respondent superior." Id. at 424. "Thus the court sees no inconsistency in imposing individual liability on supervisory employees of large employers while exempting small employers and their agents." Id. Therefore, based on a similar split of authority, and no Ninth Circuit precedent on the particular issue of disability, individual defendants remain liable under the ADA.

## CONCLUSION

Plaintiff respectfully prays for denial of Defendants' Hahm, Hahn and Suhr Motion to Dismiss. In the alternative, if the court believes the matter should be dismissed, Plaintiff respectfully requests that he be allowed to file an Amended Complaint to list and allege the facts and allegations necessary to charge the individual Defendants Hahm, Hahn and Suhr as an employer under 42 U.S.C. §2000-2 (a) and 42 U.S.C. §12111 (5)(A).

//
//
//

McDonald v. SPPC, et.al.
Response to Motion to Dismiss
Page 15 of 15

Dated this 25th day of April, 2003

MANTANONA LAW OFFICE
Attorney for **James B. McDonald, Jr.**

By: _____
RAWLEN M T MANTANONA
A duly licensed employee