**TEKER CIVILLE TORRES & TANG, PLLC**
SUITE 200, 330 HERNAN CORTEZ AVENUE
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 477-9891/472-8868
FACSIMILE: (671) 472-2601/477-2511

*Attorneys for Defendants
Michael Hahm, Brian Suhr and
Sang Yeon Hahn*

FILED
DISTRICT COURT OF GUAM
MAY - 2 2003
MARY L. M. MORAN
CLERK OF COURT

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| JAMES B. McDONALD, JR., ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> SOUTH PACIFIC PETROLEUM ) <br> CORPORATION, a Guam Corporation, ) <br> MICHAEL HAHM, BRIAN SUHR ) <br> AND SANG YEON HAHN, ) <br> ) <br> Defendants. ) <br> _____) | CIVIL ACTION NO. 02-00031 <br><br><br><br> **REPLY MEMORANDUM IN SUPPORT OF MOTION OF DEFENDANTS MICHAEL HAHM, BRIAN SUHR AND SANG YEON HAHN TO DISMISS** |

**ORIGINAL**

# I. ARGUMENT

## A. Rule 12(b)(6) Standard.

Plaintiff, James B. McDonald Jr. ("McDonald") is bound by his complaint and cannot salvage his failure to state a claim against the individual defendants by raising new allegations in his opposition. "In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to the plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *see also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003); *Kingray, Inc. v. Natinal Basketball Association, Inc.*, 188 F.Supp.2d 1177, 1192 (S.D. Cal. 2002) ("Further, Plaintiffs cannot now add allegations that there existed an agreement among the Defendants separate from the written contract to survive the instant motion to dismiss."). Although in theory McDonald could get relief in the form of permission to amend his defective pleading,[1] *see, Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001) ( "[w]here counsel is able to posit possible amendments that would be consistent with the operative complaint and could also possibly state a claim for relief, the complaint should not be dismissed on its fact with prejudice."), the court should deny leave to amend where the amendment would be futile, or where the complaint would still be subject to dismissal or where the plaintiff can prove "no set of facts" pursuant to the amended pleading which would constitute a valid claim. *Soghomonian v. United States*, 82 F.Supp.2d 1134, 1150 (E.D. Cal. 1999).

## B. There Is No Individual Liability Under Title VII And The Americans With Disabilities Act.

The law in this circuit and in all of the other circuits (except arguably the First Circuit, which has not directly addressed the issue) is that there can be no suits against individual employees or supervisors under either Title VII or the Americans with Disabilities Act. *Miller v. Maxwell's*

---

[1] Plaintiff is not cross-moving to file an amended pleading since he has not provided a copy of the proposed amended pleading as contemplated by Local Rule 15.1 ("Any party filing or moving to file an amended pleading shall reproduce the entire pleading as amended and may not incorporate any part of a prior pleading by reference except with leave of court."); *see also* 6 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1485 (2d ed. 1990).

1

Case 1:02-cv-00031 Document 21 Filed 05/02/2003 Page 2 of 12

*Intern., Inc.*, 991 F.2d 583 (9th Cir. 1993), *cert. denied*, 510 U.S. 1109 (1994), *Greenlaw v. Garrett, III*, 59 F.3d 995 (9th Cir. 1994), *cert. denied*, 519 U.S. 836 (1996), *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998), *cert. denied*, 528 U.S. 877 (1999). Acknowledging the existence of the Ninth Circuit case, *Miller v. Maxwell's Intern., Inc.*, albeit not mentioning *Greenlaw v. Garrett* and *Pink v. Modoc Indian Health Project, Inc.*, Plaintiff urges this Court to deny the individual defendants' motion to dismiss because "a wide split of authority exists among the circuit courts, which brings the Ninth Circuit decision and its rationale into question," Pl. Mem. at 11, "a line of cases," which, the Plaintiff asserts, "also distinguishes between co-workers and supervisors/managers, limiting liability to the latter." Pl. Mem. at 11.

Plaintiff's argument fails on two grounds. First, this Court is, "of course, bound by the law of [its] own circuit, and "[is] not to revolve splits between circuits no matter how egregiously in error [it] may feel [its] own circuit to be." *Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987). *Miller* and *Greenlaw* control, and, as pointed out in the individual defendants' opening memorandum, neither case permits suits against individual co-employees or supervisors under either Title VII or the Americans with Disabilities Act.

Second, Plaintiff's underlying premise that there is a "wide split in authority" is also incorrect. There is not even a little split. In support of his assertion of a split, Plaintiff cites a number of circuit and district court cases. Of the circuit courts that have addressed the issue of individual liability, all but the First Circuit now hold that there is no individual liability under Title VII of the ADA.[2] Plaintiff cites *Douglas v. Coca-Cola Bottling Co.*, 855 F. Supp. 518 (D.N.H.

---

[2] **2nd Cir.** - *Tomka v. Seiler Corp*, 66 F.3d 1295, 1313 (2nd Cir. Cir. 1995) ; **3rd Cir.** - *Sheridan v. E.I. Dupont de Nemours and Co.*, 100 F.3d 1061, 1077-78 (3rd Cir. 1996) (*en banc*), *cert. denied*, 521 U.S. 1129 (1997); *see also, Le v. University of Pennsylvania*, 321 F.3d 403, 408 n.3 (3rd Cir. 2003); *Dici v. Com. of Pa.*, 91 F.3d 542, 552 (3rd Cir. 1996); **4th Cir.** - *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998) ; **5th Cir.** - *Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *see also Pfeil v. Intercom Telecommunications*, 90 F.Supp.2d 741, 747 (N.D. Tex. 2000); **6th Cir.** - *Wathen v. General Elec. Co.*, 115 F.3d 400, 405-06 (6th Cir. 1997) (relying heavily on the Ninth Circuit's decision in *Miller v. Maxwell's Int'l, Inc.*, court held that Title VII does not provide for individual employee/supervisor liability under Title VII);**7th Cir.** -*Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *E.E.O.C. v. AIC Security Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995); **8th Cir.** - *Bonomolo-Hagen v. Clay Central-Everly Community School Dist.*, 121 F.3d 446, 447 (8th Cir. 1997). *See, Spencer v. Ripley County State Bank*, 123 F.3d 690, 691- 92 (8th Cir.1997); **9th Cir.** - *Miller v. Maxwell's Intern., Inc.*, 991 F.2d 583 (9th Cir. 1993),
(continued...)

1994), in support of the proposition that individuals may be held liable. The court in *Douglas* relied on *Lamirande v. Resolution Trust Corp.*, 834 F.Supp. 526, 528 (D.N.H.1993), which it described as "persuasive." **Larmirande, however, was subsequently overruled in *Miller v. CBC Companies, Inc*, 908 F. Supp. 1054 (D.N.H. 1995), by the same district court judge wrote the Lamirande opinion.**

The specific cases cited by Plaintiff are all from courts in circuits *that have since decided* there is no individual employee or supervisor liability under Title VII or the ADA. In *Ball v. Renner*, 54 F.3d 664 (10th Cir. 1995), cited by Plaintiff at page 11 of his memorandum, the court merely noted that the question remained open. *See* 54 F.3d at 667. Individual liability was subsequently found not to exist by the Tenth Circuit in *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir. 1996).

Plaintiff's reliance on *Paroline v. Unisys Corp.*, 879 F.2d 100, *vacated in part*, 900 F.2d 27 (4th Cir. 1990 (*en banc*) is misplaced. Pl. Mem. at 11. In *Lissau v. Southern Food Service, Inc.*, 159 F.3d 177, 180 (4th Cir. 1998), the Fourth Circuit, after examining Fourth Circuit precedent and the language and purpose of the statute, and noting "that a large number of circuit courts have held that individual supervisors are not liable under Title VII," 159 F.3d at 180, held that "supervisors are not liable in the individual capacities for Title VII violations." *Ibid*; *see also Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).

Plaintiff cites *Jones v. Continental Corp.*, 789 F.2d 1225, 1231 (6th Cir. 1986), for the proposition that individuals may be held liable as "agents" of an employer under Title VII. However, this issue was not before the court in *Jones*. In *Wathen v. General Elec. Co.*, 115 F.3d 400 (6th Cir.

---

2/ (...continued)
*cert. denied*, 510 U.S. 1109 (1994), *Greenlaw v. Garrett, III*, 59 F.3d 995 (9th Cir. 1994), *cert. denied*, 519 U.S. 836 (1996), *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1189 (9th Cir. 1998), *cert. denied*, 528 U.S. 877 (1999); **10th Cir.** - *Haynes v. Williams,* 88 F.3d 898, 901 (10th Cir. 1996); **11th Cir.** - *Cross v. State of Ala., State Dept. of Mental Health & Mental Retardation*, 49 F.3d 1490, 1504 (11th Cir.1995); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir.1991); *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (Title VII and ADEA); *Vernon v. Medical Management Associates of Margate, Inc.*, 912 F.Supp. 1549, 1555 (S.D. Fla. 1996), *cert. denied*, 516 U.S. 1011 (1995).

The First Circuit Court of Appeals does not appear to have decided the issue. *Acevedo Lopez v. Police Dept. of Com. of Puerto Rico,* 247 F.3d 26, 29 (1st Cir. 2001) (" We simply note that we have not resolved the question of whether personal capacity suits can be sustained under the ADA. **However, several other circuit courts and three district courts within this circuit have held 'that individuals are not subject to suit under [ ] the ADA."**).

1997), noted that while a majority of district courts within the Sixth Circuit have addressed the issue and have rejected the concept of individual liability (citing and relying heavily on the Ninth Circuit's decision in *Miller v. Maxwell's Int'l, Inc.*), held that Title VII does not provide for individual employee/supervisor liability under Title VII. *Wathen*, 115 F.3d at 405-06.

Plaintiff cites *Garcia v. Elf Atochem North America*, 28 F.3d 446 (5th Cir. 1994), in an attempt to distinguish between co-workers and supervisors/managers. Pl. Mem. at 11. *See* 28 F.3d at 450-51. The law of Fifth Circuit, however, does not allow individual liability for in Title VII cases. *See Huckabay v. Moore*, 142 F.3d 233, 241 (5th Cir. 1998); *see also Pfeil v. Intercom Telecommunications*, 90 F.Supp.2d 741, 747 (N.D. Tex. 2000) (explaining *Huckabay*). In fact, even in *Garcia*, the court observed that although the complaint does not make clear whether the plaintiff was suing the defendants in their individual capacities, or, rather, in their capacity as agents, "we construe Garcia's suit to be against Locke and Mowell in their official capacity since Title VII liability does not attach to individuals acting in their official capacity." *Garcia*, 28 F.3d at 451 n.2.

Plaintiff cites and quotes *Vakharia v. Swedish Covenant Hosp.*, 824 F. Supp. 769, 785 (N.D. Ill. 1993), in support of individual liability. Pl. Mem. at 12. *Vakyharia* has since been disapproved by the Seventh Circuit. *See E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276 (7th Cir. 1995).

Plaintiff cites *Bishop v. Okidata*, 864 F.Supp. 416, 423 (D.N.J. 1994), for the proposition that a conflict exists on the issue of whether an individual may be held liable under the ADA. In *Bishop* the court held that the American with Disabilities Act's inclusion of an employer's "agent" in its definition of "employer shows that Congress intended to allow claims against individuals in a supervisory capacity. "The court addressed the Ninth Circuit's holding in *Miller v. Maxwell's Int'l, Inc.*, *supra*, the most often cited of these cases, and found that the term 'agent' in the definition of 'employer' merely incorporated *respondeat superior* liability into the statute." 864 F. Supp. at 422-23. The court disagreed, stating that "[s]ome district court, however, have allowed plaintiffs to pursue actions against supervisory employees of private employers in their 'individual' capacities," 864 F. Supp. at 423 (citing cases), and that "[a] final group of courts has abandoned the 'individual'/'official' dichotomy in these cases." *Ibid.* (citing cases).

District Court Judge Irenas who decided *Bishop* had occasion in *Horvath v. Rimtec Corp.*, 102 F. Supp.2d 219 (D.N.J. 2000), to revisit the basis for this conclusion. He concluded:

> Because the statutory schemes of Title VII and the ADEA are virtually identical, the Court holds that if faced with the issue, the Third Circuit would rule that the ADEA precludes personal capacity suits against individuals. Thus, the individual claims brought under the ADEA against defendants Koeda and Johnston must be dismissed.

102 F. Supp.2d at 227-28.

### C. Single Employer Doctrine Does Not Avail Plaintiff In This Case.

Plaintiff asserts that he "was 'employed' by Messrs. Hahn, Suhr and Hahm prior to the formation of South Pacific Petroleum Corporation ("SPPC") that shared with SPPC interrelated operations, common management, centralized control of labor relations, and common ownership and financial control." Pl. Mem. at 4. This argument does not make any sense and, as a formal matter, completely misapplies the "single employer" or "integrated enterprise" doctrine, *see Kang v. U. Lim America, Inc.*, 296 F.3d 810, 815 (9th Cir. 2002),[3] is based on an unsupportable premise of

---

[3] Plaintiff's rubric for his argument is the "joint employer" or "joint employee" theory, noting that courts do not distinguish between these two theories and the criteria for both are the same. Pl. Mem. at 3 n.1. This is not true. As explained by the Sixth Circuit in *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990 (6th Cir. 1997):

> While the single employer analysis involves examining various factors to determine if two nominally independent entities are so interrelated that they actually constitute a single integrated enterprise, the joint employer analysis has been described as follows:
>
>> The basis of the [joint employer] finding is simply that one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer. Thus, the "joint employer" concept recognizes that the business entities involved are in fact separate but that they share or co-determine those matters governing the essential terms and conditions of employment.

128 F.3d at 993 n.4 (quoting *NLRB v. Browning-Ferris Ind. of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3rd Cir. 1982)).

Two or more employers may be considered "joint employers" if both employers control the terms and conditions of employment of the employee. "In determining whether the two employing entities may be considered 'joint employers,' the following factors have been considered: (1) the nature and degree of control over the employees; (2) day-to-day supervision, including discipline; (3) authority to hire and fire the employee and set conditions of employment; (4) power to control pay rates or methods of payment; (5) control of the employee records, including payroll." *Wynn v. National Broadcasting Co., Inc.*, 234 F.Supp.2d

(continued...)

"employment" under Title VII, is a transparent attempt to evade the rule that individual employees and supervisors cannot be individually liable under Title VII or the ADA, and is simply logically incoherent.[4]

In order to bring this case within either Title VII or the ADA, Plaintiff must establish that the Defendants were "employers", that he was an "employee" and that an employment relationship existed. Title VII defines "employee" as "an individual employed by an employer," 42 U.S.C. § 2000e(f), while an "employer" is defined as a "person . . . who has fifteen or more employees" during a specific period of time. 42 U.S.C. § 2000e(b).

**D. No Compensation Paid.**

Plaintiff has not, nor could he, assert that he was paid or compensated prior to his being hired as a consultant to SPPC in July of 2000. "[O]nly individuals who receive compensation from an employer can be deemed 'employees" under [Title VII]." *Llampallas v. Mini-Circuits Lab, Inc.*, 163 F.3d 1236, 1243 (11th Cir. 1998), *cert. denied*, 528 U.S. 930, 120 S.Ct. 327 (1999); *Jacob-Mua v. Veneman*, 289 F.3d 517, 521 (8th Cir. 2002). *See also,* Decl. of Brian Suhr, ¶ 7, submitted herewith.

Although the Defendants deny and reject McDonald's assertion that he assisted or participated on their behalf in any part of the acquisition of the ExxonMobil assets (*see* Suhr Decl. ¶¶ 16-27), Plaintiff's assertions in his memorandum and affidavit, which deviate from his EEOC complaint, do not establish any employment relationship that would come within Title VII or the ADA. At most, he asserts he assisted in certain matters as part of a team or a joint effort, an assertion denied by Defendants, to bid for Exxon assets. Pl. Mem. at 5. He claims that at that

---

[3] (...continued)
1067, 1093 (C.D. Cal. 2002).

[4] Plaintiff is actually presenting an "alter ego" theory, a theory that courts have rejected in attempts to impose personal or individual supervisor liability in Title VII cases. *See Worth v. Tyer*, 276 F.3d 249 (7th Cir. 2001) ("We disregard the presumption of shareholder protection from individual liability only in limited circumstances . . . . To overcome this presumption, a party must show, in addition to the interrelation of a corporation and its shareholders, that the protection must be disregarded in order to prevent fraud or the promotion of injustice. . . . The problem with the 'alter ego theory' is that it seeks to impose liability upon shareholders without a showing of fraud or injustice. *See AIC Sec.*, 55 F.3d at 1282 n.11 (suggesting that we would not adopt 'alter ego' theory because shareholder is already potentially liable through veil piercing). Our rejection of the 'alter ego' theory is further supported by Congress' aversion to individual liability under Title VII.")

meeting Hahn told him that "should he pursue purchasing the Exxon assets, Plaintiff would mange the new business and would assume full responsibility for the success or failure of the business." Pl. Mem. at 5. Plaintiff then asserts that following the March 2000 meeting, he worked with Suhr to assemble a bid proposal, "[i]n particular, Plaintiff himself <u>alone</u> developed the points, which individual defendants used during their negotiations with Exxon and later to secure the funding for SPPC." Pl. Mem. at 5 (emphasis added). Plaintiff then incredibly states that "[d]uring these pre-SPPC negotiations, but after Plaintiff agreed to work with individual defendants based on the promise of being employed as a general manager of what would become SPPC, see Suhr Decl. ¶ 31, individual defendants continually harassed Plaintiff for being overweight. Individual defendants also harassed Plaintiff on the basis of race and national origin, and used his race to give them an advantage in forming SPPC without the intention of maintaining his employment after the formation of SPPC." Pl. Mem. at 5-6. Actually, SPPC purchased a vehicle from Suhr at fair market value and gave it to McDonald. See Suhr Decl. ¶ 33. It defies belief that Defendants would pursue McDonald if they held him in such low regard, or that McDonald would accept employment with SPPC in the face of such (alleged) harassment.

In early July 2000, McDonald asserts he came to Guam to "formally negotiate his salary and to discuss the operation of SPPC and Plaintiff's involvement with the company." Pl. Mem. at 6. He states that "[i]ndividual defendants formally hired Plaintiff as the general manager and vice president of the new company, with a seat on the board of directors, with a promise for a 5% share in SPPC." Pl. Mem. at 6. While defendants deny a promise of an equity interest in SPPC, the negotiation of salary and the hiring of McDonald were nothing more than supervisory or management activities on behalf of SPPC. Plaintiff also states that he was given a company vehicle, a 1998 Ford Explorer that had been owned by Suhr's wife, with Suhr later being reimbursed in the sum of $18,000 for transferring title to the vehicle to Plaintiff. Pl. Mem. at 6. Again, this is nothing more than action on behalf of the corporation, and title documents will indubitably show that title to the vehicle remained in the company.

Plaintiff asserts that he negotiated his salary at the offices of Hanom, a Guam corporation owned by Suhr. Pl. Mem. at 6. So what? He also states that prior to the formation of SPPC

7

beginning in May 2000, Suhr's Hanom office operated as the "de facto" offices of those involved in the formation of SPPC. Pl. Mem. at 6. "Plaintiff was assigned a desk in this office, and worked at that location through November 2000. In fact, SPPC shared office space with Hanom for six months during the closing period before it could move into Exxon's space. *See* Suhr Decl. ¶¶ 8-13. Hanom's only employee was Jeanette Moreno, who worked for both Hanom and SPPC at Hanom's location, and later at the SPPC location in Tamuning. Moreno provided work for SPPC as an employee of Hanom, and later provided work for Hanom, even while she received an SPPC paycheck." Pl. Mem. at 6.

Plaintiff imaginatively attempts to apply the integrated enterprise theory by arguing that: 1) the management of the "pre SPPC entity" and SPPC consists of essentially the same players: Hahn, Suhr, and Hahm; 2) Hahn Suhr and Hahm, along with Plaintiff, managed the operation in obtaining the proposal, executing Plaintiff's plans, and in forming SPPC; 3) While Plaintiff's responsibilities expanded under SPPC, Plaintiff was basically executing the plans that he himself developed for the new company; 4) His essential role did not change, nor did the roles of Hahn, Suhr or Hahm, once SPPC was incorporated.; 5) All individual defendants, as well as Plaintiff, worked pre-SPPC for the formation of SPPC and the work the entity was to later perform as SPPC; 6) The physical location of the pre-SPPC entity was housed in Hanom, a Guam corporation owned by Suhr. . . . All expenses incurred by Hanom relating to the formation and operation of SPPC were later reimbursed either by Hahn's corporation, Callahahn, or by SPPC; and 7) Suhr also provided plaintiff with a personally owned vehicle as the company vehicle." Pl. Mem. at 7.

### E. Common management.

Plaintiff asserts that Hahn, Suhr and Hahm contacted Plaintiff to join their management team, and he did so after promises of an executive position. Pl.Mem. at 8. There was no common management, SPPC is run by its Board of Directors. *See* Suhr Decl. ¶ 32.

### F. Centralized Control.

Plaintiff asserts that personnel decisions for the pre-SPPC entity were made by Hahn, Suhr, and Hahm, "as exemplified by their pursuit of Plaintiff to join their management team." Pl. Mem. at 8. "Along with Plaintiff, all individual defendants were subsequently involved in controlling labor

relations and transfer of hiring Exxon employees as SPPC employees." There was no common management, SPPC is run by its Board of Directors. *See* Suhr Decl. ¶ 32; Pl.Mem. at 8.

### G.     Common Ownership or Financial Control.

This is inapplicable. The entities did not exist at the same time. Plaintiff concludes, incorrectly, that "there is no doubt that the pre-SPPC entity that consisted mainly of Hahn, Suhr and Hahm is essentially the same management team at SPPC. It is palpable from these facts that Plaintiff worked for Hahn, Suhr and Hahm, that all individual defendants acted as supervisors of Plaintiff, and that there is such an interrelation of these two entities so as to bring individual defendants within the jurisdiction of Title VII. IN light of the inferences to be viewed in Plaintiff's favor, this conclusion is inescapable." Pl. Mem. at 9.

The single employer or integrated enterprise theory simply does not apply. Plaintiff is trying to bootstrap pre-incorporation activities into SPPC and SPPC into pre-incorporation activities of a group of individuals with respect to which there was no employment relationship.

In *D.W. v. Radisson Plaza Hotel Rochester*, 958 F.Supp. 1368 (D. Minn. 1997), the plaintiffs adopted a similar strategy to that adopted by McDonald in this case. In response to the rejection of individual liability in Title VII cases the plaintiffs argued that:

> that the "integrated enterprise" theory supports their claims of personal liability. "Under the judicially created single employer or integrated enterprise theory, the interrelation of two nominally separate business entities may lead a court to consider them as a single entity.' *Rogers v. Sugar Tree Prods., Inc.*, 7 F.3d 577, 582 (7th Cir.1993) (citations omitted) (emphasis added). Here, however, Plaintiffs seek to apply the theory to an individual, not a business entity. In essence, Plaintiffs seek to use the integrated enterprise theory to pierce the corporate veil. Unfortunately, Plaintiffs fail to provide the Court with either precedent or a coherent legal argument in support of their desire to extend the reach of this doctrine. Therefore, *1376the Court dismisses the Title VII claims against Defendants Gus Chafoulias and Andrew Chafoulias

958 F.Supp. at 1375-76.

### H.     EEOC Complaint.

The EEOC complaint names only "South Pacific Petroleum Corporation" as the employer. The Ninth Circuit has held that

> The district court correctly identified the general rule that Title VII claimants may sue only those named in the EEOC charge because only they had an opportunity to respond to charges during the administrative proceeding. See 2 A. Larson, Employment Discrimination, § 49.11(c)(2) (1990). Nonetheless, "Title *1459 VII

9